UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MATTHEW HOOKER,                              )
          *Plaintiff*,                       )
                                             )
     *vs.*                                   )        1:13-cv-00718-JMS-TAB
                                             )
CAROLYN COLVIN, *Acting Commissioner of*     )
*Social Security*,                           )
          *Defendant*.                       )

## ORDER

Presently pending before the Court is Plaintiff Matthew Hooker's Motion for Attorney's Fees under the Equal Access to Justice Act ("EAJA"). [Dkt. 19.] Mr. Hooker filed this action seeking reversal of Administrative Law Judge Julia Gibbs' decision that he was not disabled as defined by the Social Security Act. [Dkt. 15.] Shortly thereafter, the parties agreed to remand the case for further administrative proceedings. [Dkt. 16.] The Court granted the motion and entered judgment accordingly. [Dkts. 17; 18.] The instant Motion for Attorney's Fees under the EAJA followed.

In Mr. Hooker's opening brief, he requests an award of $3,447.11 for legal services rendered in this action, representing 18.5 hours of work at $186.33 per hour. [Dkt. 19-1 at 2.] The Commissioner does not argue that an EAJA fee award is inappropriate, nor does she contest that compensation for 18.5 hours is warranted. The Commissioner does maintain, however, that Mr. Hooker did "not justify an enhanced hourly rate in his opening brief, and cannot do so for the first time in reply." [Dkt. 20 at 1.] In his reply brief, Mr. Hooker contends that the enhanced hourly rate is justified and that he explicitly reserved his right to justify the award in his reply brief. [Dkt. 21 at 1.] Moreover, on reply, he requests fees for 24 hours, 5.5 hours more than his original request, to compensate for "research and preparation" of the reply brief, resulting in a

total fee request of $4,471.92.  [Dkt. 21 at 3.]  The Court will address the appropriateness of the requested hourly rate and compensable hours in turn.

### A.    Hourly Rate

"The [EAJA] . . . provides that the award 'shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living [since 1996, when the current version of the Act was passed] or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.'" *Mathews-Sheets v. Astrue*, 653 F.3d 560, 562 (7th Cir. 2011) (second alteration in original) (quoting 28 U.S.C. § 2412(d)(2)(A)(ii)).   "The $125 rate is a presumptive ceiling; to justify a higher rate the plaintiff must point to inflation or some other special factor."  *Id.*  Should the claimant point to inflation,

> he still must show that it actually justifies a higher fee; for while it might seem obvious that a statutory price ceiling should be raised in step with inflation, to do that as a rote matter would produce windfalls in some cases.  Inflation affects different markets, and different costs in the same market, in different ways.  The framers of the [EAJA] were right therefore not to create an *entitlement* to an inflation adjustment; the lawyer seeking such an adjustment must show that inflation has increased the cost of providing adequate legal service to a person seeking relief against the government.

*Id.* (emphasis in original).

Before turning to the parties' arguments, the Court notes its concern about Mr. Hooker's decision to not fully justify the requested inflation-adjusted hourly rate in his opening brief, waiting instead to do so in his reply brief in the event that the Commissioner contested the rate sought.   This wait-and-see approach is inappropriate.   First, the party seeking an inflation-adjusted rate bears the burden of proving that such a rate is warranted.  *See id.*  That party should therefore attempt to carry their burden in the opening brief.  *See Cummings v. Astrue*, 2013 WL

- 2 -

1840410, *2 (S.D. Ind. 2013) ("The Seventh Circuit's decision in *Mathews-Sheets* has made it clear that the attorney must show that inflation actually justifies a higher fee for that attorney's practice, therefore counsel should include this specific information in his initial petition . . . ."). Secondly, as the Commissioner points out, such a briefing method will necessitate the filing of a surreply in every case where the Commissioner desires to contest the specific evidence proffered to justify the requested rate.  [Dkt. 20 at 2.]

The Court recognizes that Mr. Hooker's counsel purports to proceed in this manner to minimize attorney's fees in instances when a reply brief is unnecessary.  [Dkt. 19-1 at 2.]  But again, as the Commissioner asserts, "any efficiency gains would be offset by the need to file a surreply to address new justifications for enhanced fees," [dkt. 20 at 2].  As discussed further below, the Court agrees with the Commissioner that efficiency concerns militate toward including justifications for the requested fee in the opening brief.  *See, e.g.*, *Cummings*, 2013 WL 1840410, at *2 (recognizing that the inclusion of the specific justifications for the requested fee in the opening brief "may eliminate the need for the Commissioner to file a response in opposition to the EAJA fee.").

Perhaps more importantly, Mr. Hooker adopts this wait-and-see approach at his own peril.  This is because the Court "is entitled to find that an argument raised for the first time in a re-

ply brief is forfeited."[1]  *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009).  Thus the Court, in its discretion, can decide not to address justifications set forth for the first time in reply brief.

Mr. Hooker's briefing reveals that almost all of the arguments made in support of the requested fee were made for the first time in his reply brief.  In his opening brief, Mr. Hooker suggests that the requested rate is appropriate because his counsel is an experienced social security attorney and that inflation, as measured by the Consumer Price Index ("CPI"), justifies the hourly rate requested.[2]  [Dkt. 19-1 at 2.]  The unadorned assertion that Mr. Hooker's counsel is "very experienced" (an assertion that was not supported by evidence), without more, does not explain why the inflation-adjusted rate is warranted, as his counsel's experience, without more, does not relate to how inflation has impacted his counsel's practice.  *See Mathews-Sheets*, 653 F.3d at 563-64.  And sole reliance on the generalized notion that inflation, as measured by the CPI, has occurred is clearly insufficient to justify the requested rate.  *See id.* at 562; *see also Walton v. Colvin*, 2013 WL 1438103, *4 (S.D. Ind. 2013) ("*Mathews-Sheets* expressly rejected citing inflation without providing further evidence indicating how it has affected the relevant market."); *Hart v. Astrue*, 2012 WL 2577515, *1-2 (S.D. Ind. 2012) ("While abundant or complex evidence is not required, Plaintiff is required to provide *some* basis to justify an increase in fees from the

---

[1] Mr. Hooker notes that "the Plaintiff explicitly reserved the right to present additional arguments in this reply brief."  [Dkt. 21.]  But he cites no authority supporting his implicit proposition that he can circumvent forfeiture principles simply by reserving the right to assert new arguments in his reply brief that he could have and should have raised in his opening brief.  This is not surprising, given that "forfeiture is the failure to make the *timely* assertion of a right."  *United States v. Berg*, 714 F.3d 490, 498 (7th Cir. 2013) (emphasis added) (citation and quotation marks omitted).  Put differently, Mr. Hooker cites no authority for the proposition that he can reserve the right to make an untimely argument.

[2] The fact that Mr. Hooker justifies the hourly rate based on inflation in his opening brief distinguishes this case from *Mathews-Sheets*, where forfeiture was inappropriate because the Commissioner opened the door for the claimant to justify the requested hourly rate based on inflation. 653 F.3d at 563.  Unlike here, the claimant's opening brief in *Mathews-Sheets* did not "mention cost of living."  *Id.*

$125.00 statutory rate.") (emphasis in original). Because the only other arguments and evidence in support of the requested rate were first advanced in Mr. Hooker's reply brief when they could have been raised in his opening brief, the Court would be well within its discretion to deem those arguments forfeited and reject the requested hourly rate on this ground.[3] *See Narducci*, 572 F.3d at 324.

The Court need not rest its rejection of the requested rate on Mr. Hooker's forfeiture, however, because even considering Mr. Hooker's late-blooming arguments, he failed to comply with the dictates of *Mathews-Sheets*. To justify the requested rate of $186.33 per hour in his reply brief, Mr. Hooker relies again on the CPI Inflation Calculator and the fact that, in several other cases in this District, hourly rates greater than the $125 presumptive ceiling have been awarded. [Dkt. 21 at 2-3 (citing cases).] Furthermore, Mr. Hooker attaches three affidavits to his reply brief from attorneys "that state that they charge more than $125 per hour and would not take a case without an enhanced fee adjusted for inflation." [*Id.* at 3.]

None of these bases for the requested rate meet the showing required under *Mathews-Sheets*. As discussed above, the CPI alone is insufficient to justify a rate above the presumptive ceiling. *See Mathews-Sheets*, 653 F.3d at 562; *Walton*, 2013 WL 1438103, at *4. Nor does Mr. Hooker's reliance on other cases awarding comparable hourly rates justify the rate requested *in this case*, as the requested "inflation adjustment must . . . be justified by reference to *the particu-*

---

[3] Mr. Hooker contends that the Commissioner's position that he cannot justify the requested fee in his reply brief is "wrong" given that, in *Cummings*, evidence submitted only in reply was deemed sufficient. [Dkt. 21 at 2.] This argument is without merit. Matters of forfeiture are discretionary. *See, e.g.*, *Narducci*, 572 F.3d at 324 (holding that district courts are "entitled," rather than required, to deem arguments forfeited that are raised for the first time in a reply brief); *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 389 (7th Cir. 2003) (same). Thus, a forfeiture forgiven in one case does not foreclose the application of forfeiture in another. Moreover, in forgiving the forfeiture in *Cummings*, the Court stressed that counsel requesting a higher fee "should include" the justification "in [her] initial petition." *Cummings*, 2013 WL 1840410, at *2 n.2. As discussed above, Mr. Hooker failed to do so.

- 5 -

*lar circumstances* of the lawyer seeking the increase." *Mathews-Sheets*, 653 F.3d at 564 (emphasis added).

For this same reason, the Court cannot rely on the three affidavits submitted by Mr. Hooker to support the requested fee.   Each of the three affidavits submitted by Mr. Hooker are from experienced social security attorneys who state that their non-social security hourly rate is significantly greater than $125 per hour and that "[i]nflation has increased the cost of providing adequate legal services to [their] social security clients," including increased costs for staff salaries, rent, legal research and insurance.  [Dkt. 21-1; *see also* dkts. 21-2; 21-3.]  Such evidence, like Mr. Hooker's reliance on other cases from this District, does not speak to "the particular circumstances" of Mr. Hooker's counsel, as is required.  *Mathews-Sheets*, 653 F.3d at 564.  In other words, this evidence "does not satisfy *Mathews-Sheets*, in that it does not answer the question of how inflation . . . has affected the cost of providing legal services by *this attorney*; it only tells the Court that there has been inflation and an increase in legal fees generally."  *Orr v. Astrue*, 2013 WL 1840471, *3 (S.D. Ind. 2013) (emphasis added); *see also Thompson v. Commissioner of Social Sec.*, 2013 WL 3228555, at *1 (C.D. Ill. 2013) (holding that compliance with *Mathews-Sheets* requires the claimant to "show an increase in the cost of legal services, both *for his attorney specifically* and for others in the legal market in his region") (emphasis added); *Mireles v. Astrue*, 2012 WL 4853065, *3 (N.D. Ill. 2012) ("*Mathews-Sheets* is best read to require a litigant seeking a cost of living increase under the EAJA to establish two things: (1) that the cost of living in the region has indeed increased to the degree of his requested adjustment, and (2) *that his*

*attorney's costs of providing legal services have increased* in a manner that tends to show that inflation has indeed raised those costs.") (emphasis added).[4]

The Court recognizes that "a fee of $125" for these types of legal services "seems awfully low." *Mathews-Sheets*, 653 F.3d at 564.  Nevertheless, the Court still must reject Mr. Hooker's requested hourly rate, as the proffered justification for the rate left the Court with no information as to "the particular circumstances" of his counsel.[5]  *Id.*  As the Seventh Circuit explained, "Inflation affects different markets, and different costs in the same market, in different ways." *Id.* at 563.  Examples of this abound: "Suppose inflation had not affected the wages [an attorney] pays h[er] clerical employees, or had been offset by advances in law-office technology or changes in the standards and procedures of the Social Security Administration that made it cheaper to litigate claims for disability benefits." *Id.* at 564.  Without such particularized information, the Court is left to speculate regarding the effect, if any, of inflation on Mr. Hooker's counsel's practice.

---

[4] The Court notes that, not only did Mr. Hooker not make the particularized showing required, but the affidavits provided were not from attorneys primarily practicing in the relevant geographic area—namely, Indianapolis.  Of the three attorney affidavits Mr. Hooker submitted, none of the attorneys purport to primarily practice in Indianapolis, or even Indiana.  [*See* dkts. 21-1; 21-2; 21-3.]  Because this evidence is not directed toward the relevant legal market, it too fails to advance Mr. Hooker's position.  *See Mathews-Sheets*, 653 F.3d at 563 ("Inflation affects different markets, and different costs in the same market, in different ways."); *Hart*, 2012 WL 2577515, at *2 ("[M]arket rates may vary greatly between cities such as Chicago, Indianapolis and Milwaukee."); *see also Thompson*, 2013 WL 3228555, at *1; *Mireles*, 2012 WL 4853065, at *3.

[5] In his reply brief, Mr. Hooker notes that due to the "contingency nature of Social Security Disability appeals and the risk involved, Plaintiff's attorney would have to reevaluate the business decision of taking federal Social Security Disability appeals if enhanced fees were not awarded," and that Mr. Hooker "specifically sought out this attorney because he knew that she performed federal court appeals."  [Dkt. 21 at 3.]  While these assertions certainly relate to Mr. Hooker's attorney's particular circumstances, they do not relate to the relevant circumstances—namely, those related to how inflation has impacted his attorney's practice and fees.  Notably, as to the expressed business concern, the Court's denial of the increased rate *in this case* is just that; in future cases Mr. Hooker's counsel could receive the requested rate should the showing mandated by the Seventh Circuit be made.

This required showing is not an exercise in trivialities, but a recognition that there is no "*entitlement* to an inflation adjustment." *Id.* at 563 (emphasis in original). A showing other than one explicitly tied to the individual circumstances of the attorney before the Court would permit a pro forma showing regarding inflation, such as the one made here, to suffice, which would essentially create the very entitlement to an inflation adjustment rejected by the Seventh Circuit.

Accordingly, because Mr. Hooker did not carry his burden to demonstrate entitlement to an inflation-adjusted hourly rate in this case, the Court will calculate the fee award using the presumptive ceiling of $125 per hour.[6]

### B.      Number of Hours

Mr. Hooker requested compensation for 18.5 hours of attorney time in his opening brief. [Dkt. 19-1 at 2.] The Commissioner did not dispute that compensation for 18.5 hours is appropriate. [Dkt. 20.] In his reply brief, however, Mr. Hooker requests compensation for an additional 5.5 hours for time spent drafting his reply brief. [Dkt. 21 at 3.]

The Court declines to award Mr. Hooker's counsel compensation for the additional 5.5 hours of time spent drafting the reply brief. As the Court explained above, the substance of the reply brief could and should have been included in the initial brief, and the Court was entitled to deem those arguments forfeited had it so desired. Mr. Hooker's counsel should not be compensated for forfeited arguments, especially when the forfeiture was a direct result of Mr. Hooker's

---

[6] The Court recognizes that other claimants in this District have been given another chance to provide hourly-rate evidence in accordance with *Mathews-Sheets* when their initial motion and evidence is insufficient. *See, e.g.*, *Orr*, 2013 WL 1840471, at 3; *Hart*, 2012 WL 2577515, at *2. But given Mr. Hooker's inappropriate briefing strategy and the abundance of case law interpreting and applying *Mathews-Sheets*, much of which Mr. Hooker cited in his reply brief, the Court believes that Mr. Hooker's failure to make the required showing does not warrant a second chance. Moreover, such an additional chance would really be a third, given that, in her response brief, the Commissioner directed Mr. Hooker to *Mathews-Sheets*, yet Mr. Hooker failed to either cite it or alone comply with it in reply.

wait-and-see approach to briefing the hourly rate issue, an issue in which Mr. Hooker bears the burden. *See Mathews-Sheets*, 653 F.3d at 562.

Despite Mr. Hooker's position to the contrary, efficiency is more often than not maximized when the party bearing the burden of proof fronts the evidence and arguments necessary to prevail in his or her opening brief. If claimants such as Mr. Hooker seek an increased hourly rate, they "should include this specific information in [their] initial petition which may eliminate the need for the Commissioner to file a response in opposition to the EAJA fee." *Cummings*, 2013 WL 1840410, at *2. But even in situations such as this where the Commissioner desires to contest the claimant's showing, if the claimant properly fronts his or her arguments and evidence in the opening brief, the Commissioner is given a full opportunity to respond to them in her response brief. If, as here, the claimant waits until the reply brief to make the showing required by *Mathews-Sheets*, the Court is either left without an adequate response from the Commissioner or must permit the filing of a surreply. Neither situation lends itself to the efficient disposition of EAJA motions.

For these reasons, the Court declines to award Mr. Hooker's attorney compensation for the hours spent drafting a reply brief made almost entirely of arguments that could have and should have been raised in the opening brief. Accordingly, compensation is appropriate only for the initially requested 18.5 hours of attorney work.

### C.   Conclusion

For all the reasons stated, Mr. Hooker's Motion for Attorney's Fees under the EAJA is **GRANTED IN PART** in accordance with this opinion. [Dkt. 19.] Fees are awarded for 18.5 hours of attorney work at a rate of $125 per hour, which results in a fee award of $2,312.50. That award is payable to Mr. Hooker, subject to any outstanding federal debts. If Mr. Hooker

does not have any outstanding federal debts, however, the Commissioner should honor his as-

signment of the EAJA award, [dkt. 19-3], and direct the award to his counsel.

11/20/2013

_Jane Magnus-Stinson_

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only**:

Jonelle L. Redelman
REDELMAN LAW
jonelle@redelmanlaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov